IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| EDWIN M. GUYTON, | ) | CASE NO.1:18-CV-00964 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| WARDEN BRIGHAM SLOAN, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Respondent. | ) | |

**Introduction**

Before me[1] is the *pro se* petition of Edwin M. Guyton for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Guyton is currently incarcerated by the State of Ohio at the Lake Erie Correctional Institution in Conneaut, Ohio.[3] He is serving an aggregate sentence of eight years in prison imposed in 2016 by the Ashtabula County Court of Common Pleas after a jury found Guyton guilty of two counts of operating a vehicle while under the influence with the specification that each count involved a repeat offense.[4]

---

[1] The matter was referred to me for a Report and Recommendation under Local Rule 72.2 by United States District Judge James S. Gwin in a non-document order entered on July 5, 2018. United States District Judge Pamela A. Barker was subsequently assigned to the case on June 28, 2019, which did not affect the referral to me.
[2] ECF No. 1.
[3] *Id*. at 1. I verified the facts of Guyton's confinement on October 23, 2020 at drc.ohio.gov/offendersearch
[4] ECF No. 1 at 1.

1

Guyton here raises five grounds for relief.[5] The State in its return of the writ contends that Guyton's petition should be dismissed in part because some claims are non-cognizable and denied in part because the remaining claims are without merit.[6] Guyton filed a traverse.[7]

For the reasons that follow I will recommend that the *pro se* petition of Edwin Guyton for a writ of habeas corpus be dismissed in part and denied in part as is more fully set forth below. I further recommend denying Guyton's request for an evidentiary hearing, also for the reasons set forth below.

## Statement of Facts

The essential facts as found by the Ohio appeals court[8] are straightforward and not disputed.[9]

Allyson Heinz was working the overnight shift at a Circle K gas station on Main Street in Ashtabula, Ohio.[10] At 3 a.m. Guyton pulled his car into the station, stepping on the brakes repeatedly as he approached the gas pump and only narrowly avoiding a collision with it.[11] After sitting in his car "awhile," Guyton exited, approached Heinz, told her he was "fucked up" and asked her to pump gas for him.[12] Heinz asked Guyton if "everything as okay," to which Guyton replied "yes" and gave her money for gas.[13]

---

[5] *Id.* at 5-11.
[6] ECF No. 8 at 15-25.
[7] ECF No. 9.
[8] *State v. Guyton*, 74 N.E. 3d 939 (Ohio Ct. App. Dec. 12, 2016).
[9] Facts found by the state appeals court are presumed correct by the federal habeas court unless rebutted by clear and convincing evidence. *Warren v. Smith,* 161 F.3d 360-61 (6th Cir. 1998).
[10] *Guyton*, 74 N.E.3d at 941.
[11] *Id*.
[12] *Id*.
[13] *Id*.

2

Heinz noticed that Guyton was noticeably intoxicated in because he smelled of alcohol, stumbled, and slurred his words.[14] Using her personal cell phone she called 911 to report an impaired driver.[15] While remaining connected to the 911 dispatcher, Heinz assisted Guyton in pumping the gas because Guyton was unable to place to pump nozzle in the neck of the gas tank.[16] After the gas was pumped, Heinz told the dispatcher that Guyton drove away from the gas station "towards the Bunker Hill area."[17] A recording of this first 911 call was played for the jury at Guyton's trial.[18]

After about "five to ten minutes," Guyton returned to the Circle K station where he attempted to park in a space in front of the station but actually took up two to three spaces.[19] Guyton told Heinz, who had come out of the store, that he needed gas and became argumentative when she told him he had just purchased gas.[20] Heinz thereupon instructed Guyton to pull his car to a pump.[21] Guyton, instead, asked Heinz to move his car, to which Heinz replied that she was not allowed to do that.[22] With that, Guyton moved his car "into the middle of the parking lot" somewhere between the parking spaces at the front and the pumps.[23]

While Guyton was doing this Heinz went back inside the store and placed a second call to 911.[24] This second 911 call was also played to the jury.[25]

---

[14] *Id*.
[15] *Id*.
[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] *Id*. at 942.
[20] *Id.*
[21] *Id*.
[22] *Id*.
[23] *Id.*
[24] Id.
[25] *Id*.

3

After placing the second 911 call, Heinz went back outside where Guyton became agitated with her for not moving his car for him.[26] He then asked her to help him hold his pants up.[27] At this point that Ashtabula police patrolman Dan Gillespie arrived to find Guyton standing next to the open door of his car with the keys in the ignition, the engine idling, and Heinz holding his pants up.[28] Officer Gillespie walked Guyton back into the Circle K store.[29] He noticed that Guyton smelled strongly of alcohol, almost fell over while walking, slurred his speech and had difficulty understanding and carrying on a conversation.[30]

Officer Gillespie asked to perform field sobriety tests.[31] Guyton refused, saying that the officer had not observed him operating a vehicle and that his girlfriend had driven him to the Circle K.[32] At that, Guyton was arrested for OVI and then transported to the hospital where his blood was drawn.[33] The lab supervisor of the Lake County Crime Laboratory testified at trial that the results of the blood test showed that Guyton was legally impaired.

## Statement of the Case

### 1. In the Trial Court

Guyton was charged with two counts of OVI.[34] Each count carried the specification that Guyton had been previously convicted of or pled guilty to five or more equivalent offenses within the past twenty years.[35]

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] ECF No. 8, Att. 1 (State court record) at 1-3.
[35] *Id.*

Before trial Guyton moved to suppress the evidence obtained as part of the arrest, including the sobriety and blood tests and any statements he made.[36] Although Guyton acknowledged that he was under the influence, he argued that there was no probable cause for the arrest because the police officer did not actually see Guyton operating his vehicle but instead improperly relied on the "unreliable third party statement" of Allyson Heinz as the basis for the arrest.[37]

The State, in response, noted that Heinz had reported to the 911 dispatcher the make and license number of the car that had been driven into the Circle K by an impaired driver, which information matched Guyton's car, and that Heinz had positively identified Guyton to Officer Gillespie as the driver.[38] The State further noted that although Guyton claimed to Officer Gillespie that his girlfriend had driven the car to the Circle K and had jumped out of the car after they had argued, Officer Gillespie observed that the front passenger of the vehicle was covered by "a large pile of CDs" leading the officer to conclude that no one else had been sitting in the front seat of the car.[39] Moreover, the State observed that Guyton was awaiting trial on his eighth OVI offense and "acting belligerent," thus prompting Officer Gillespie to obtain a warrant for the blood draw.[40] Finally, the State noted that Officer Gillespie asked Guyton for the name of his girlfriend who he claimed was driving, which he provided.[41] Upon being contacted and questioned by officers this woman – identified only as Terrin – said she was not Guyton's girlfriend but that he was "the uncle to the father of her child."[42] She said she purchased the vehicle Guyton was driving because Guyton asked her to do so, and she said it was "a mistake" to have done

---

[36] *Id.* at 4-8.
[37] *Id.* at 6.
[38] *Id.* at 10.
[39] *Id.* at 11.
[40] *Id.*
[41] *Id.* at 12.
[42] *Id.*

5

so since she knew Guyton had a suspended license.[43] She said she had not seen Guyton in several days and was at home with her child the entire night of the incident.[44]

The court denied the motion to suppress.[45]

Before trial the parties stipulated that Guyton had been convicted of five prior OVI offenses as set forth in the specifications.[46] At trial, Guyton's main defense was that "the evidence and testimony will show that Edwin Guyton was not the one operating that motor vehicle, [and] that Allyson Heinz, the clerk, was mistaken or has reason to be unsure of who was operating that vehicle."[47] To that point, Allyson Heinz testified at trial to the facts as set forth above and the prosecution played both 911 calls.[48] Guyton's trial counsel did not object to the introduction of the 911 calls.[49] But Heinz was questioned by the prosecution about details of the calls during the playback and afterward, and defense counsel cross-examined Heinz about the calls.[50]

The jury found Guyton guilty of both counts of OVI.[51] In the sentencing entry the trial court then merged the two OVI counts for sentencing purposes, imposing a three-year term in prison for this offense, and further sentenced Guyton to an additional five years in prison for the repeat offender specification, resulting in an aggregate sentence of eight years.[52] The court suspended Guyton's license for life, required him to pay a mandatory fine of $1,350, and ordered him to complete an alcohol addiction program.[53]

2. **In the Ohio court of appeals**

---

[43] *Id.*
[44] *Id.* at 13.
[45] *Id.* at 25-28.
[46] *Guyton*, 74 N.E.3d at 942.
[47] ECF No. 8, Attachment 2 at 78.
[48] *Id.* at 88.
[49] *Id.* at 80.
[50] *Id.* at 77.
[51] *Id.* at 86.
[52] *Id.*
[53] *Id.*

6

Guyton, with new counsel,[54] timely[55] appealed.[56] In his brief in support he raised the following two assignments of error:

    1.    The trial court committed plain error when it admitted the 911 recordings.[57]

    2.    Defense counsel provided ineffective assistance by failing to object to the admission of the 911 recordings. [Guyton] was prejudiced by counsel's deficient performance such that he was deprived of a fair trial.[58]

The State submitted a responsive brief.[59] The Ohio appeals court overruled both assignments of error and affirmed the judgment of the trial court.[60]

### 3. In the Supreme Court of Ohio

Guyton, *pro se*, timely[61] appealed to the Supreme Court of Ohio.[62] In his brief in support of jurisdiction Guyton raised two propositions of law:

    1.    The trial court committed plain error when it admitted unauthenticated 911 recordings into evidence.

    2.    [Guyton] was denied the effective assistance of trial counsel as counsel fail[ed] to object to the admission of the 911 audio recordings thereby depriving [Guyton] of due process and his constitutional rights to a fair trial.[63]

---

[54] *Id*. at 52. Guyton was represented on appeal by Desirae DiPiero and at trial by Dean Topalof. *Id.* at 49.

[55] Ohio App. R. 4 provides that notice of appeal be filed within 30 days of entry of the final order.

[56] ECF No. 8, Attachment 2 at 39.

[57] *Id*. at 53.

[58] *Id*.

[59] *Id.* at 64.

[60] *Id*. at 82.

[61] An appeal to the Supreme Court of Ohio must be filed within 45 days of the judgment being appealed. *Keeling v. Warden,* 673 F.3d 452, 460 (6th Cir. 2012).

[62] ECF No. 8, Attachment 2 at 94.

[63] *Id*.

The State did not file a brief in opposition. The Supreme Court of Ohio declined to accept jurisdiction.[64] The record does not show that Guyton then sought a writ of certiorari from the Supreme Court of the United States.

### 4. Application to re-open the appeal

While the appeal was still pending before the Ohio Supreme Court, Guyton, *pro se*, timely[65] applied to re-open his appeal under Ohio Appellate Rule 26(B).[66] Guyton argued that his appellate counsel was ineffective in the following three ways:

> 1. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to investigate [Guyton's] case, failure to interview potential witnesses, prepare for trial and get evidence for [Guyton] to present at trial.[67]
>
> 2. [Guyton's] counsel was ineffective for failing to assign as error trial court's [*sic*] ineffectiveness for failure to object to an inappropriate conversation between the trial judge and juror and failure to request a mistrial thereafter.[68]
>
> 3. [Guyton's] counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for entering into a stipulation that was in conflict with the defense's theory of the events of the incident, and failing to object to the prosecutor's prejudicial comments concerning the stipulated OVI convictions.[69]

The State did not file a responsive brief. The Ohio appeals court denied the application.[70]

---

[64] *Id*. at 125.

[65] Applications to re-open must be filed within 90 days of the journalization of the appellate judgment. Ohio App. R. 26(B)(1). Here, the judgment was journalized on December 12, 2016 and the application to re-open filed on February 27, 2017, or 77 days.

[66] ECF No. 8, Attachment 2 at 126.

[67] *Id*. at 129. Among Guyton's arguments here is that defense counsel should have developed the point that Allyson Heinz's alleged "flirting" with Guyton – purportedly established by the fact that the police report indicated she was holding his pants up when police arrived – would have provided the reason why Guyton's girlfriend became angry and ran from the car.

[68] *Id*. at 133.

[69] *Id*. at 136.

[70] *Id*. at 143.

8

Guyton, *pro se*, then timely filed an appeal with the Supreme Court of Ohio.[71] In his memorandum in support of jurisdiction Guyton asserted three propositions of law:

    1.    Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failing to investigate defendant's case, failure to interview potential witnesses, prepare for trial, and get evidence for defendant to present at trial.[72]

    2.    Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failing to object to an inappropriate conversation between trial judge and juror and failure to request a mistrial thereafter.[73]

    3.    Appellate counsel was ineffective for entering into a stipulation that was in conflict with the defense theory of events of the incident and failing to object to the prosecutor's prejudicial comments concerning the stipulated OVI convictions.[74]

The State did not file a responsive brief, and the Supreme Court of Ohio declined to accept jurisdiction.[75]

## 5. Federal habeas corpus

### A. The Petition

Guyton, *pro se*, timely[76] filed the present petition.[77] In the petition he raised the following five grounds for relief:

---

[71] *Id*. at 153.
[72] *Id*. at 154.
[73] *Id*.
[74] *Id*.
[75] *Id*. at 174.
[76] A federal habeas petition is timely filed within one year of when his conviction becomes final, but that period does not run during the pendency of a properly filed motion for post-conviction collateral review. 28 U.S.C. § 2244 (d)(1)(A), 2244 (d)(2). An application to re-open an appeal in Ohio is such a post-conviction motion for collateral review. *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005). As set forth above, the one-year habeas limitations period did not run until his Rule 26(B) application was decided on July 26, 2017 – which was 272 days prior to the filing of this habeas petition.
[77] ECF No. 1 at 14. This is the date Guyton, an incarcerated *pro se* petitioner, certified that he placed his petition in the prison mail system. Absent evidence to the contrary,

9

**Ground One**: Defendant [*sic*] was denied the effective assistance of trial counsel as counsel failed to object to the admission of the 911 audio recordings thereby depriving [Guyton] of his due process and constitutional right to a fair trial.[78]

**Ground Two**: The trial court committed plain error when it admitted unauthenticated 911 audio recordings into evidence.[79]

**Ground Three**: Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failing to investigate defendant's [*sic*] case, failure to interview witnesses, prepare for trial and get evidence for [Guyton] to present at trial.[80]

**Ground Four**: Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to object to an inappropriate conversation between trial judge and juror and thereafter counsel's failure to request a mistrial for the above stated reasons.[81]

**Ground Five**: Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for entering into a stipulation that was in conflict with the defense theory of events of the incident, and failing to object to the prosecutor's prejudicial comments concerning the stipulated OVI convictions.[82]

Guyton does not request the appointment of counsel but does ask for an evidentiary hearing so that unspecified "evidence may be presented in person allowing this court to get a clearer view of the evidence."[83]

### B. Return of the writ

#### (1) *Grounds One and Two*

The State in its return of the writ initially argues that Ground One – ineffectiveness of trial counsel for not objecting to the introduction of the 911 calls – and Ground Two –

---

federal habeas courts accept this date as the filing date. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted).
[78] ECF No. 1 at 5.
[79] *Id*. at 6.
[80] *Id*. at 8.
[81] *Id*. at 10.
[82] *Id*., Attachment 1 at 22.
[83] *Id*. at 14.

error by the trial court in admitting the calls – are connected by the issue of the use at trial of the 911 call.

First, it argues, as noted by the Ohio appeals court, that the failure to object at trial to the introduction of the 911 calls waived everything but a plain error review by an appeals court.[84] In that context, it notes that the Ohio appeals court recognition of a waiver and use of the plain error standard constitutes an enforcement of Ohio's contemporaneous objection rule, thus creating a procedural default in this court that Guyton has not excused.[85]

But even if the claim could here be considered, the State argues that it lacks merit. It points to the appellate court's review of the 911 calls where it found that Heinz herself was able to verify the authenticity of the recordings and that the substance of the recordings was admissible hearsay under the present sense exception to the hearsay rule.[86] And the State contends that because a federal habeas court is bound to accept a state courts' interpretation of its own law, this Court may not review the finding of admissible hearsay.[87]

In addition, by applying the well-known, two-part *Strickland*[88] test to counsel's decision not to object, the State observed that had counsel objected to the use of the 911 recordings Heinz would have authenticated the recordings and the trial court would have found, as did the appellate court, that they were admissible hearsay. Thus, Guyton suffered no prejudice from the admission of the recordings.

Further, as the record shows, Guyton cannot show actual innocence. Guyton did not contest that he was intoxicated and Heinz testified that she twice personally observed Guyton operating the vehicle.[89] Thus, apart from the 911 calls, there was substantial

---

[84] ECF No. 8 at 15.
[85] *Id*. at 17.
[86] *Id*. at 18.
[87] *Id*.
[88] *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must show counsel performed deficiently and also that petitioner suffered prejudice from such deficiency.
[89] *Id*. at 19 (citing appeals court opinion).

11

evidence of Guyton's guilt. Moreover, Guyton has produced no new evidence of his actual innocence.

In addition, to the extent that Guyton is now claiming that the admission of the 911 recordings violated state law, the State contends such a claim is non-cognizable.[90] Further, as the Sixth Circuit has long taught, only when a state evidentiary ruling is so egregious as to deny fundamental fairness may such a ruling violate due process.[91] Here, the use of the 911 recordings did not deprive Guyton of a fundamentally fair trial because Heinz personally observed Guyton drive the car, testified that no one else was with him and described his conduct as that of a person under the influence, which was later established by the blood test.[92] Finally, Heinz was available at trial to be cross-examined as to the authenticity of the 911 recordings and Guyton's counsel did so question Heinz.[93]

**(2)** *Grounds Three, Four and Five*

The State here observes that the final three grounds all concern ineffective assistance of appellate counsel. Ground Three contends that appellate counsel should have raised issues about alleged deficiencies in trial counsel's representation as to lack of pre-trial investigation and preparation. Ground Four asserts that appellate counsel should have raised an issue of trial counsel ineffectiveness for not objecting to a conversation between the trial judge and a juror. Ground Five maintains that appellate counsel should have raised an issue as regards trial counsel's decision to stipulate to the prior OVI convictions and to not object to the prosecution's purported use of these conviction in its closing argument.

As to Ground Three, the State first points out that it could not address any claims that counsel failed to interview Guyton's alleged girlfriend or investigate images from security cameras on adjacent properties because those claims rely on evidence outside the

---

[90] *Id*. at 20.
[91] *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).
[92] ECF No. 8 at 20-21.
[93] *Id*. at 22.

record.[94] Further, in addition to these claims being based on speculation as to what the alleged girlfriend may have said or what any other security camera may have shown, Guyton suffered no prejudice because the prosecution presented compelling, eyewitness testimony that Guyton was the driver.[95] Moreover, although Guyton argues that trial counsel should have gone after "contradictions" in Ms. Heinz's testimony, the state appeals court found that there were no contradictions, noting simply that Heinz's testimony at trial was more detailed than the 911 call.[96]

Ground Four concerns a brief conversation between a juror and the trial judge. A juror mentions as they came back from recess that: "It didn't take until tomorrow; we're on it." The judge responds: "As soon as I noticed the alternate came out last I said they figured it out. They're doing good. Don't worry, it only -it's really quick. I'm really pleased with the jurors. They handled it really fast. They – you guys are doing good, so you're good."[97]

As the Ohio appeals court noted in assessing this claim, Guyton merely asserted that this exchange was a "dead bang winner" on appeal without showing why this "innocent interaction" was grounds for a mistrial.[98] Since the judge and juror did not discuss any fact in controversy or law applicable to the case, the Ohio court was "unable to discern anything prejudicial about the exchange."[99]

In Ground Five Guyton seeks to fault appellate counsel for not criticizing trial counsel's decision to stipulate to Guyton's five prior OVI convictions and for not objecting to the prosecution's use of the prior convictions in closing argument. The State notes first that the prosecution did not mention the OVI convictions during closing argument but did mention the prior convictions in the discussion about sentencing after the jury had reached

---

[94] *Id*.
[95] *Id*.
[96] *Id*. (citing record).
[97] ECF No. 8, Attachment two at 145.
[98] *Id*.
[99] *Id*. at 145-46.

a verdict.[100] Next, as the Ohio appeals court points out, evidence about the prior OVI convictions would have been admissible even without the stipulation in order for the prosecution to prove the specifications.[101] As the State notes, the stipulation, if anything, benefited Guyton by precluding the prosecutor from presenting a lengthy, detailed account of his past driving history which would have emphasized that record.[102] As such, the Ohio appeals court, employing the *Strickland* analysis, found no ineffective assistance of appellate counsel.[103]

### 6. Guyton's traverse

Guyton submitted a lengthy traverse.[104]

He first addresses the procedural default of his argument about admitting the 911 recordings by conceding that the State's position in this regard "may have some merits."[105] But, he argues, given the "magnitude of the issues presented" this Court "should not allow the [State] to hide behind the procedural bar" but should address the claims on the merits.[106] He concludes by stating that enforcing the procedural default "would create a manifest injustice."[107]

As to Grounds One and Two he contends that the error in admitting the 911 calls so infected the entire trial as to deny him a fair trial.[108] The error, he contends, was that unauthenticated 911 recordings, which consist of inadmissible hearsay, improperly bolstered the testimony of Allyson Heinz, who was otherwise 'an unreliable witness."[109]

---

[100] ECF No. 8 at 24 (citing record).
[101] ECF No 8, Attachment 2 at 146.
[102] ECF No. 8 at 25.
[103] ECF No. 8, Attachment 2 at 146.
[104] ECF No. 9.
[105] *Id*. at 1.
[106] *Id*. at 2.
[107] *Id*. at 3.
[108] *Id*. at 4.
[109] *Id*. at 5-7.

14

This makes the evidentiary ruling here so fundamentally unfair that "no American citizen would have faith in the outcome of Guyton's trial.[110]

As to Grounds Three, Four and Five Guyton does not address the central points made by the State or by the Ohio appeals court. Specifically, as to Ground Three, he does not consider or refute the observation that the appellate court cannot consider matters outside the record and that such matters in speculative form constitute Guyton's claim in this ground.[111] Further, in Ground Four, Guyton does not explain how the brief "innocuous" exchange between the judge and juror was a basis for a mistrial and so was reason to find his trial counsel ineffective for not objecting.[112] Finally, as to Ground Five, Guyton repeats at multiple places the incorrect statement that the prosecution referenced his prior convictions in closing argument and does not acknowledge the statements were made after the verdict.[113] He also never addresses the Ohio appellate court's observation that in the absence of a stipulation the prosecution would have needed to detail Guyton's prior OVI convictions to prove the specifications, thus eliminating any possible prejudice from the convictions entering the record as stipulations.[114]

## Analysis

### A. Preliminary observations

Before proceeding with my analysis of the claims I make the following preliminary observations:

1.  There is no dispute that Guyton is currently in state custody as the result of his conviction and sentence by an Ohio court and that he was so incarcerated at the time of

---

[110] *Id*. at 9.
[111] *Id*. at 11-15.
[112] *Id*. at 15-17.
[113] *Id*. at 17-18. He even accentuates his factual error by claiming that the prosecution used the prior convictions to "sway the jury to an OVI conviction in this case."
[114] *Id*.

the filing of this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction.[115]

2.      There is also no dispute, as was detailed above, that this petition was timely filed under the applicable statute.[116]

3.      In addition, Guyton states,[117] and my own review of the docket confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[118]

4.      Moreover, subject to resolution of the procedural default argument made by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of being presented through one full round of the state's established appellate review procedure.[119]

5.      Finally, Guyton has not requested the appointment of counsel but does seek an evidentiary hearing.[120] That request will be addressed below.

**B. Request for an evidentiary hearing**

The Supreme Court in *Cullen v. Pinholster*[121] teaches that where a state court has adjudicated a claim on the merits, federal habeas review is limited to the facts on the record before the state court.[122] Further, an evidentiary hearing is not required where the claim on habeas review raises only legal issues.[123]

---

[115] 28 U.S.C. § 2254(a); *Ward v, Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).
[116] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).
[117] ECF No. 1 at 12.
[118] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).
[119] 28 U.S.C. § 2254 (b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerkel,* 526 U.S. 838, 842 (1999).
[120] 28 U.S.C. § 2254 (e)(2); ECF No. 1 at 14.
[121] 563 U.S. 170 (2011).
[122] *Id*. at 185.
[123] *Uncapher v. Maclaren*, 2013 WL 980172, at *1 (E.D. Mich. March 13, 2013) (citations omitted).

Here, Grounds One and Two which concern the 911 recordings ultimately center on the legal question of whether they were properly admitted. Thus, an evidentiary hearing is not required to adjudicate these claims. Similarly, Grounds Three, Four and Five were adjudicated on the merits by the state appeals court that considered the 26(B) application. *Pinholster* precludes an evidentiary hearing in such a circumstance.

Accordingly, Guyton's request for an evidentiary hearing should be denied.

## C. Grounds for relief

As has been extensively detailed above, the first two claims here concern the admission of the 911 recordings. Several analytical paths toward resolution of these claims are present in the state court opinion – *i.e.*, that any claim concerning the improper admission of the tapes was waived because of a lack of contemporaneous objection; that on plain error analysis the recordings were properly admitted under a recognized exception to the hearsay rule; that even if the admission was improper it was not prejudicial because the substance of the recording was testified to at trial by an eye-witness who was available to be cross-examined.

In the end, I recommend, for the reasons given by the Ohio appeals court, Grounds One – error by trial counsel for not objecting - should be denied after AEDPA analysis because the decision of the Ohio appeals court that there was no ineffective assistance for lack of objection where the admission itself was not in error is not an unreasonable application of the clearly established federal law of *Strickland*. I further recommend that Ground Two be dismissed as a non-cognizable state law claim where the state court has ruled that under Ohio rules of evidence the trial court did not error in admitting the 911 recordings.

As to Grounds Three I recommend denying this claim on the merits after finding, for the reasons stated above, that the decision of the Ohio appeals court in this regard was not an unreason application of the clearly established federal law of *Strickland*. The appeals

17

court found no ineffective assistance on the record before it, which, by law, could not include evidence outside of the record.

Further, as to Ground Four, I also recommend denying this claim on the merits and finding that the decision of the Ohio appeals court was not an unreasonable application of *Strickland*. As the appellate court noted, counsel cannot be ineffective for failing to object to an innocuous exchange between judge and juror that did not rise the level of grounds for a mistrial. Finally, I recommend denying Ground Five on the merits. The Ohio court's decision that there was no ineffective assistance by either appellate or trial counsel with regard to either trial counsel approving a stipulation as to prior OVI convictions or the purported improper use of Guyton's prior OVI convictions were not unreasonable applications of *Strickland*. As the court stated, evidence of the prior convictions would necessarily have been introduced to support the specifications and the prosecutor did not, as Guyton alleged, use the prior convictions in his closing argument.

## Conclusion

For the reasons set forth above, I recommend that the *pro se* petition of Edwin Guyton for a writ of habeas corpus be dismissed in part and denied in part. I further recommend that Guyton's request for an evidentiary hearing be denied for the reasons stated.

IT IS SO RECOMMENDED.

Dated: November 16, 2020          s/William H. Baughman Jr.
                                                                United States Magistrate Judge

## **Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[124]

---

[124] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).